IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SCOTT LANE RHOME,  )
 )
      Plaintiff, )
 )
    v. ) Civil Action No. 18-1532
 )
COMMISSIONER OF )
SOCIAL SECURITY, )
 )
      Defendant. )

O R D E R

AND NOW, this 31st day of March, 2020, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]     Plaintiff argues, in essence, that the Administrative Law Judge ("ALJ") erred by: failing to address whether Plaintiff's impairments meet the severity of certain listed impairments in 20

1

C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") at Step Three of the sequential evaluation process; failing to call a medical expert to advise whether Plaintiff's impairments meet the requirements of Listing 12.05; and failing to evaluate properly the opinion evidence provided by Plaintiff's treating physicians. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as her ultimate determination, based upon all the evidence presented, of Plaintiff's non-disability.

First, Plaintiff contends that the ALJ erred by failing to discuss whether his impairments meet the requirements of Listings 12.02 and 12.03 at Step Three of the sequential analysis. At the outset, the Court notes that the Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled. See 20 C.F.R. § 416.925(a). Because the Listings define impairments that would prevent a claimant from performing any gainful activity—not just substantial gainful activity—the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability. See Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Thus, a claimant has the burden of proving a presumptively disabling impairment by presenting medical evidence that meets all of the criteria of a listed impairment or is equal in severity to all of the criteria for the most similar listed impairment. See 20 C.F.R. § 416.926.

With regard to Listing 12.02, "Neurocognitive disorders," the Court notes that Plaintiff has simply not shown that such listing is relevant to his case. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02. As Listing 12.02 involves the existence of significant cognitive decline from a prior level of functioning, and Plaintiff has not shown (nor does the record reveal) evidence of any such decline, the Court finds that the ALJ did not err by failing to address the listing in her decision. See id.

Plaintiff presumedly contends that the ALJ should have discussed Listing 12.03, "Schizophrenia spectrum and other psychotic disorders," because of various scattered references in the record to schizophrenia. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03. Regardless of whether Listing 12.03 should have been separately addressed by the ALJ, the Court finds that, upon review of the record and the ALJ's analysis, the ALJ's decision indicates that Plaintiff's impairments do not satisfy that listing's criteria. Remand for separate consideration of Listing 12.03 in these circumstances is therefore not necessary.

Specifically, Listing 12.03 requires either that both the listing's paragraph A and B criteria be met, or that both the listing's paragraph A and C criteria be met. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03. Notably, the paragraph B and C criteria of Listing 12.03 are identical to the paragraph B and C criteria of Listings 12.04, 12.06 and 12.08, which the ALJ did explicitly consider at length and in significant detail in her analysis. As the ALJ explained in her decision, in order to satisfy the paragraph B criteria, Plaintiff's impairments have to result in at least one extreme or two marked limitations in certain broad areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. (R. 1037). Further, as the ALJ also explained, a "marked" limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited," while an "extreme"

limitation means "the inability to function independently, appropriately or effectively, and on a sustained basis." (R. 1037).

The ALJ discussed Plaintiff's symptoms and treatment in her decision, but she ultimately found that the above-stated paragraph B requirements are simply not met. In fact, she addressed evidence relevant to the above elements, but concluded that Plaintiff has only moderate limitations in each of these categories. (R. 1037-39). Similarly, the ALJ addressed the paragraph C requirements and found that the evidence of record did not satisfy such criteria either. Specifically, the ALJ stated that although Plaintiff's mental impairments have been severe for the two-year duration, there is not evidence of both 1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of Plaintiff's mental disorder; and 2) marginal adjustment, with minimal capacity to adapt to changes in Plaintiff's environment or to demands that are not already part of Plaintiff's daily life. (R. 1039).

Therefore, because the ALJ considered whether Plaintiff met Listing 12.03's paragraph B and C criteria when she evaluated whether Plaintiff met Listings 12.04, 12.06 and 12.08, the Court concludes that any possible error in failing to address Listing 12.03, specifically, is harmless. See Kerdman v. Colvin, No. 13-4216, 2014 WL 3783872, at *8 (D.N.J. July 31, 2014).

Second, Plaintiff argues that the ALJ erred by failing to call a medical expert ("ME") to advise whether Plaintiff's impairments meet the requirements of Listing 12.05. At the outset, the Court notes that ALJs are given "broad discretion in determining whether to consult with a medical expert." Hardee v. Comm'r of Soc. Sec., 188 Fed. Appx. 127, 129 (3d Cir. 2006). Additionally, although Plaintiff cites to the HALLEX to support his argument, the Agency has actually clarified when obtaining ME testimony is "Discretionary" or "Not Discretionary," and provides that an ALJ must obtain an ME opinion in only 3 situations: when the Appeals Council or a Federal Court has ordered an ME opinion; when there is a question about the accuracy of medical test results which requires an evaluation of background medical test data; and when the ALJ is considering finding that Plaintiff's impairment medically equals a listing. See HALLEX Hearings, Appeals, and Litigation Law (HALLEX) 1-2-5-34; HALLEX Vol. I, Transmittal No. I-2-170. As none of those situations exist here, the Court finds that the ALJ was not required to consult an ME.

Furthermore, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet the criteria of Listing 12.05, "Intellectual Disorder." See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Included in the Listing 12.05 required criteria, Plaintiff had to establish that he has significant deficits among four areas of adaptive functioning, as discussed, supra. Specifically, Plaintiff had to show that he has either one extreme limitation or two marked limitations in these areas of functioning. After significant discussion of those criteria and the evidence of record, the ALJ reasonably found that Plaintiff did not have the requisite limitations.

3

As noted, supra, the ALJ found that Plaintiff has only moderate limitations in the four listed areas of adaptive functioning, namely, the abilities to: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.05(B), 12.00(E). With regard to understanding, remembering, or applying information, the ALJ noted that, although Plaintiff has been diagnosed with borderline intellectual functioning and though his cognitive functioning is generally described as below average by treatment providers, he was able to graduate from high school, his reading and reading comprehension skills were significantly above the expected level when he was young, and it was expected that Plaintiff could probably perform better with remediation and motivation. (R. 1037). The ALJ also explained that Plaintiff is able use his food stamps on his own, and that he is able to play video games online with his brother and friends, that he has made attempts to find work and study graphic arts, that he wanted to have rehab for vocation and independent living, and that he has been referred to OVR by his caseworker. (R. 1037).

As to interacting with others, the ALJ noted that Plaintiff receives treatment for diagnosed generalized anxiety disorder, bipolar disorder, and cyclothymia, and that records show hospitalizations for suicidal thoughts, although they seem to involve situational episodes stemming from domestic or financial stress or a reaction to his Lithium medication. (R. 1037). However, the ALJ also explained that the record reflects a great deal of interaction with women over the internet, and treatment records show in-person relationships with multiple women, including someone whom Plaintiff had married. (R. 1037-38). Additionally, the ALJ remarked that Plaintiff attends and is very active in his church and Bible study, plays cards at church, and is looking forward to singing at church. (R. 1038). The ALJ also stated that Plaintiff regularly plays in a dart ball league, which includes attending tournaments with other teams. (R. 1038). Further, the ALJ explained that Plaintiff plays video games at home with his brother and online with others, uses a headset (meaning that he is listening to and interacting with others while also using a controller), and that he admittedly enjoys talking to the other players. (R. 1038).

Regarding concentration, persistence, or maintaining pace, the ALJ noted, among other things, that Plaintiff has been adjudged as being competent to manage his own finances, and that records show no signs of decompensation under stress, with Plaintiff being able to maintain concentration and focus. (R. 1038). The ALJ noted that Plaintiff's concentration is sufficient to regularly play video games, operating his own controller, and that he was able to describe clearly all of the buttons and knobs at his hearing. (R. 1038). The ALJ also noted that Plaintiff's neurologist has filled out the paperwork for him to get his driver's license, that nothing in the record indicates that he does not have the mental capacity to operate a motor vehicle, and that Plaintiff testified that he has practiced driving with his father and has driven up to the speed limit. (R. 1038).

With regard to adapting or managing oneself, the ALJ explained that Plaintiff sometimes goes to work with his mother, cleaning one side of a room while she cleans the other. (R. 1038). The ALJ also remarked that Plaintiff has reported being independent in his personal care and with his activities of daily living. (R. 1038). The ALJ further noted that Plaintiff makes arrangements, on his own, for disabled services to pick him up when he needs to go somewhere

4

since he lives in a remote area and cannot use public transportation. (R. 1038). The ALJ also stated that Plaintiff was able to work part-time as a dishwasher but was later laid off. (R. 1038). Finally, the ALJ explained that Plaintiff has made attempts to find work and study graphic arts and was hopeful and excited by these prospects, that his family and friends have encouraged him, and that he has been referred to OVR by his caseworker. (R. 1038-39).

Although Plaintiff asserts that the record contains evidence that should have led the ALJ to find that he has marked limitations in some of the above-listed areas of functioning, such evidence does not conclusively show marked or extreme limitations in Plaintiff's areas of functioning, and the Court cannot simply reweigh the evidence at this juncture in order to come to a different conclusion than that reached by the ALJ as discussed above. See Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990). The ALJ has already considered the evidence of record and made findings on this issue, and the Court finds that substantial evidence supports that decision. The Court therefore finds that the ALJ appropriately found that the criteria of paragraph B of Listing 12.05 are not satisfied, and that no medical expert was required to aid in that analysis.

Finally, Plaintiff contends that the ALJ improperly weighed the opinion evidence of his treatment providers. First, it is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). Additionally, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). A treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). A treating physician's opinion on the ultimate issue of disability is not entitled to any "special significance," and an ALJ is not required to accept it since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Soc. Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

In the present case, the Court finds that the ALJ sufficiently explained his rationale for giving all the medical opinions, including those from Plaintiff's treating sources, the weight that he chose in his analysis. The ALJ did not fail to provide sufficient reasons for discounting the treating physicians' opinions, nor did he simply substitute his own lay analysis for their judgment in formulating Plaintiff's RFC. Rather, the ALJ fulfilled his duty as fact-finder to evaluate the medical opinions, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. § 416.927.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED.

---

Moreover, the only specific complaint that Plaintiff alleges regarding his treating physicians' opinions is that his treating psychologist, Stephen M. Neal, D.O., opined that he would be off-task and absent from work more than four days per month, but the ALJ did not include that limitation in the RFC and in the corresponding question to the vocational expert ("VE"). (R. 1028). In fact, the ALJ explained the weight that he was giving to Dr. Neal's opinion and the other opinions in the record only after engaging in an extensive discussion of the evidence, including Plaintiff's treatment records and other objective medical evidence, his reported symptoms, and discussion of his activities of daily living. (R. 1036-61). Specifically, the ALJ noted that, although Dr. Neal opined that Plaintiff has marked deficiencies in social functioning and in concentration, persistence and pace, while also opining that he would miss more than four days of work per month, Dr. Neal also reported that Plaintiff had a GAF of 55-60, indicating only mild to moderate deficiencies in functioning. (R. 1059). The ALJ also noted that Dr. Neal did not explain his rationale for his marked/seriously limited assessments, and his treatment notes consistently show that Plaintiff has been relatively stable with improved anxiety and less depression when compliant with medication, memory intact, intellect intact and average, and euthymic mood. (R. 1059-60). The ALJ also noted that Dr. Neal opined that Plaintiff has a complete inability to function independently outside of his home, "which is not supported anywhere in the medical records or by [Plaintiff's] reported activities." (R. 1060). The ALJ reasonably concluded that Dr. Neal's opinions appear inconsistent with his own treatment records and the record as a whole, and he therefore found them to be less persuasive than the moderate assessments by other doctors that are consistent with and supported by the cumulative record. (R. 1060).

The Court thus finds that the ALJ did not err in evaluating the opinions of Plaintiff's treating physicians in formulating the RFC. Moreover, since a hypothetical question to a VE need only include those functional limitations that are credibly established in the record, the ALJ did not err by failing to include, in her hypothetical question to the VE, Dr. Neal's opinion that Plaintiff would miss four days of work per month. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

Therefore, the Court finds that the ALJ did not err in addressing Listings 12.02 and 12.03 at Step Three of the sequential evaluation process, nor did the ALJ err in failing to call a medical expert to advise whether Plaintiff's impairments meet the requirements of Listing 12.05. Further, the ALJ did not err by failing to evaluate properly the opinion evidence provided by Plaintiff's treating physicians, nor did she err in posing the hypothetical question to the VE based on the RFC. Accordingly, the Court affirms.

s/ Alan N. Bloch
United States District Judge

ecf: Counsel of record